YM    JUDGE HOLDERMAN
MAGISTRATE JUDGE COX

**FILED**

**JANUARY 11, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**08 C 277**

| | |
|---|---|
| WESTLEY BASSETT, Individually and On Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>ULTA SALON, COSMETICS & FRAGRANCE, INC., LYNELLE P. KIRBY, GREGG R. BODNAR and BRUCE E. BARKUS, )<br><br>Defendants. ) | CIVIL ACTION NO.<br><br>CLASS ACTION COMPLAINT<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Westley Bassett ("Plaintiff"), alleges the following based upon the investigation by Plaintiff's counsel, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Ulta Salon, Cosmetics & Fragrance, Inc. ("Ulta" or the "Company"), securities analysts' reports and advisories about the Company, and information readily available on the Internet, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a federal class action on behalf of purchasers of the common stock of Ulta, who purchased or otherwise acquired Ulta's common stock pursuant or traceable to the Company's October 25, 2007 Initial Public Offering (the "IPO" or the "Offering") through

December 10, 2007, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.    Ulta is a retailer of beauty products which includes fragrances, skin care, cosmetics, styling and salon tools, and haircare.  The Company operates 237 retail stores in 30 states, all of which include a full service salon.  The Company also distributes products through its website.

3.    On October 25, 2007, the Company conducted its IPO.  In connection with its IPO, the Company filed a Registration Statement and Prospectus (collectively referred to as the "Registration Statement") with the SEC.  The IPO was a financial success for the Company, as it sold 8.54 million shares of stock at $18 per share, raising over $153 million.  At the close of business on October 25, 2007, Ulta's stock had increased $11.82 per share to $29.82, representing a 65.67% increase from the IPO price.

4.    In its Registration Statement and throughout the Class Period, Ulta reported and alluded to financial results from its 2007 first and second quarters, implying that consistent trends in expenses and inventory levels would continue.  The Company failed to make any significant reference to the third quarter 2007, which was to close on November 9, 2007, nine days after the Registration Statement was issued.

5.    Then on December 11, 2007, Ulta shocked investors when it released its third quarter 2007 fiscal results.  Therein, the Company revealed that it had an additional $15 million of seasonal inventory, and that its selling, general, and administrative expenses ("SG&A") had increased 36% to $55.6 million, due largely to increased expenditure for advertising.

6.    On this news, shares of the Company's stock declined $6.59 per share, or 23.96

percent, to close on December 11, 2007 at $20.91 per share, on unusually heavy trading volume.

7.    The Complaint alleges that, throughout the Class Period, defendants failed to disclose material adverse facts about the Company's financial well-being and prospects. Specifically, defendants failed to disclose or indicate the following: (1) that the Company was unable to effectively manage inventory, resulting in a 40% increase of inventory; (2) that the Company's SG&A, as a percentage of net sales, had increased in the third quarter, largely a result of previously undisclosed increased advertising expenses; (3) that the Company did not reveal any significant information about third quarter 2007 earnings in their Registration Statement, despite the fact that the third quarter was to end nine days after the filing of the Registration Statement; and (4) that the Company lacked adequate internal and financial controls.

8.    As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class Members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.    The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

10.    This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act (15 U.S.C. § 77v) and pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

11.    Venue is proper in this Judicial District pursuant to Section 22 of the Securities Act and pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).

Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this Judicial District. Additionally, the Company's IPO was actively marketed in this Judicial District. Also, Ulta's principal place of business is located within this Judicial District.

12.    In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13.    Plaintiff, Westley Bassett, as set forth in the accompanying certification, incorporated by reference herein, purchased Ulta's common stock at artificially inflated prices during the Class Period and has been damaged thereby.

14.    Defendant Ulta is a Delaware corporation with its principal place of business located at 1135 Arbor Drive, Romeoville, Illinois.

15.    Defendant Lynelle P. Kirby ("Kirby") was, at all relevant times, the Company's President and Chief Executive Officer ("CEO"), and Chairman of the Board of Directors.

16.    Defendant Gregg R. Bodnar ("Bodnar") was, at all relevant times, the Company's Chief Financial Officer ("CFO").

17.    Defendant Bruce E. Barkus ("Barkus ") was, at all relevant times, the Company's Chief Operating Officer ("COO").

18.    Defendants Kirby, Bodnar and Barkus are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Ulta's reports to the SEC,

4

press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.   Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Ulta is a retailer of beauty products which includes fragrances, skin care, cosmetics, styling and salon tools, and haircare.  Ulta operates 237 retail stores in 30 states, all of which include a full service salon.  The Company also distributes products through its website.

20.     On October 24, 2007, Ulta conducted its IPO, selling 8.54 million shares of stock at $18 per share, raising over $153 million.  As the Company stated in its press release:

> *Ulta Salon, Cosmetics & Fragrance, Inc. (the "Company") (NASDAQ: ULTA) today announced the pricing of its initial public offering of 8,539,648 shares of common stock, at a price of $18.00 per share. The shares will be listed on the NASDAQ Global Select Market on October 25, 2007 under the symbol "ULTA". Of the 8,539,648 shares of common stock, 7,666,667 shares will be offered by the Company and 872,981 will be offered by the selling stockholders. The underwriters have a 30-day option to purchase up to an additional 1,280,947 shares from the selling stockholders at the initial public offering price less the underwriting discount, to cover over-allotments.*

5

The Company expects to receive net proceeds of approximately $124.7 million from the offering and intends to use the net proceeds to pay in full the approximately $93.0 million of accumulated dividends in arrears on its preferred stock and the approximately $4.8 million redemption price of the Series III preferred stock, and to use any remaining proceeds to reduce its borrowings under the third amended and restated loan and security agreement. The Company will not receive any proceeds from the sale of common stock by the selling stockholders.  [Emphasis added.]

### Materially False and Misleading
### Statements Made in the Registration Statement

21.    Regarding the Company's SG&A expenses, the Registration Statement, in relevant part, revealed that these expenses remained relatively constant as a percentage of net sales, and were only expected to increase in the third quarter due to certain options vesting, as evidenced by the following statements and charts:

*The July 2007 employee option grants included two 316,000 grants to our Chief Executive Officer of which 25% of the fair value of each grant will vest upon the consummation of an initial public offering which will cause a significant increase in our selling, general, and administrative expense in our fiscal 2007 third quarter. We expect to recognize approximately $1.2 million and $1.0 million of share-based compensation in our fiscal 2007 third and fourth quarters, respectively.* At August 4, 2007, there was approximately $7.3 million of unrecognized compensation expense related to unvested stock options. The cost is expected to be recognized over a weighted-average period of approximately three years.

\*        \*        \*

| | Fiscal Year Ended | | | Six Months Ended | |
|---|---|---|---|---|---|
| | January 29, 2005 | January 28, 2006 | February 3, 2007 | July 29, 2006 | August 4, 2007 |
| (Dollars in thousands) | | | | | |
| Net Sales | $491,152 | $579,075 | $755,113 | $322,026 | $394,562 |
| Cost of Sales | $346,585 | $404,794 | $519,929 | $221,906 | $276,017 |

| Gross Profit | $144,567 | $174,281 | $235,184 | $100,120 | $118,545 |
| **Selling, general and administrative expenses** | **$121,999** | **$140,145** | **$188,000** | **$80,921** | **$99,170** |

*       *       *

| | Fiscal Year Ended | | | Six Months Ended | |
|---|---|---|---|---|---|
| | January 29, 2005 | January 28, 2006 | February 3, 2007 | July 29, 2007 | August 4, 2007 |
| (Percentage of net sales) | | | | | |
| Net Sales | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% |
| Cost of Sales | 70.6% | 69.9% | 68.9% | 68.9% | 70.0% |
| Gross Profit | 29.4% | 30.1% | 31.1% | 31.1% | 30.0% |
| **Selling, general, and administrative expenses** | **24.8%** | **24.2%** | **24.9%** | **25.1%** | **25.1%** |

[Emphasis Added]

22.    Regarding the Company's merchandise inventories, the Registration Statement, in relevant part, revealed a trend of a 15% to 18% rise per fiscal quarter, as evidenced by the following chart:

| | January 28, 2006 | February 3, 2007 | August 4, 2007 (unaudited) |
|---|---|---|---|
| (Dollars in Thousands) | | | |
| **Currents Assets:** | | | |
| Cash and cash equivalents | $2,839 | $3,645 | $3,165 |
| Receivables, net | $15,757 | $18,476 | $14,295 |
| **Merchandise inventories** | **$109,374** | **$129,237** | **$148,559** |
| Prepaid expenses and other current assets | $14,942 | $15,276 | $23,292 |
| Deferred income taxes | $2,539 | $5,412 | $5,476 |
| Total current assets | $145,451 | $172,046 | $194,787 |

*       *       *

7

| Total assets | $338,597 | $397,594 |
|---|---|---|

[Emphasis added]

23.     On the first day of trading following the Company's IPO, shares of the Company's stock rose $11.82 per share, or 65.67 percent, to close on October 25, 2007 at $29.82 per share, on unusually heavy trading volume.

24.     The statements contained in ¶¶ 21 – 22 were false and misleading because defendants failed to disclose or indicate the following: (1) that the Company was unable to effectively manage inventory, resulting in a 40% increase of inventory (26.7% of net sales); (2) that the Company's SG&A, as a percentage of net sales, had increased in the third quarter, largely a result of previously undisclosed increased advertising expenses; (3) that the company did not reveal any significant information about third quarter 2007 earnings in their Registration Statement, despite the fact that the third quarter was to end nine days after the filing of the Registration Statement; and (4) that the Company lacked adequate internal and financial controls.

**The Truth Begins to Emerge**

25.     On December 11, 2007, the Company issued a press release entitled, "Ulta Announces Third Quarter Fiscal 2007 Results - Introduces Guidance." Therein, the Company, in relevant part, revealed:

> Ulta Salon, Cosmetics & Fragrance, Inc. (NASDAQ:ULTA), today announced financial results for the thirteen week ("Third Quarter") and thirty-nine week ("First Nine Months") periods ended November 3, 2007, which compares to the same periods ended October 28, 2006 in the prior year.
>
> * * *
>
> Lyn Kirby, Ulta's President and Chief Executive Officer, stated: "The third quarter marked a highly productive and successful period for our Company. We reported continued strength in sales and earnings, demonstrating our ongoing ability to provide

8

consumers with a compelling beauty shopping experience, by having the right brands and the right value proposition available at convenient locations with friendly, approachable service. We successfully opened a record 26 new stores and remodeled 7 existing locations during the quarter. I am pleased with our positioning as we start the holiday period and equally excited to begin this next phase of our journey as a public company focused on increasing value for all Ulta stakeholders."

On October 30, 2007, Ulta closed its initial public offering of common stock in which the Company sold 7,666,667 shares raising net proceeds of $123.9 million. Net proceeds were used to pay $93.0 million of accumulated preferred dividends, $4.8 million to redeem the Company's Series III preferred stock, and $26.1 million to reduce borrowings and for general corporate purposes. In connection with the offering, the Company also converted 41,524,002 preferred shares into common shares.

**For the First Nine Months:**

Net sales increased 23.5% to $602.8 million from $488.1 million in the first nine months of fiscal 2006;

Comparable store sales increased 7.4%, compared to a comparable store sales increase of 13.7% (as realigned for the 53rd week calendar shift) in the first nine months of fiscal 2006;

*Operating income was $22.8 million, compared to $23.8 million in the first nine months of fiscal 2006. Operating income for the fiscal 2007 first nine month period includes the impact of $2.8 million of warehouse management software implementation related costs, $1.9 million of incremental accelerated depreciation expense related to the Company's store remodel program, and $3.8 million of incremental pre-opening expenses;*

*Net income was $11.7 million, compared to $12.9 million in the first nine months of fiscal 2006;*

*On a GAAP basis, income per diluted share was $0.05, compared to income per diluted share of $0.26 in the first nine months of fiscal 2006; and*

*Adjusted income per diluted share was $0.20, compared to $0.23 in the first nine months of fiscal 2006. Adjusted income per share excludes the effects of preferred stock dividends and equalizes the dilutive effects of the preferred shares for the period. See Exhibit 4 for a complete description and reconciliation of*

*adjusted income per basic and diluted share and reconciliation to the GAAP equivalents.*

* * *

*Selling, general and administrative expenses (SG&A) in the third quarter of fiscal 2007 were $55.6 million, or 26.7% of net sales, compared to $40.8 million, or 24.6% of net sales, in the third quarter of fiscal 2006. The increase in third quarter SG&A as a percentage of net sales is primarily due to one incremental advertising vehicle during the quarter due to the 53rd week calendar shift as well as incremental advertising expense, both of which were largely offset by increased vendor advertising allowances. The Company also incurred incremental stock compensation expense of approximately $0.9 million versus the same period last year.*

*Pre-opening expenses in the third quarter of fiscal 2007 were $4.5 million, or 2.2 % of net sales, compared to $2.9 million, or 1.7% of net sales for the third quarter of fiscal 2006 reflecting 26 new stores and 7 remodeled stores opened during the quarter as compared to 11 new stores and 5 remodels in the prior year quarter.*

*Merchandise inventories at the end of the quarter were $219.5 million reflecting a $62.7 million increase compared to the fiscal 2006 third quarter. Approximately $42.7 million of the increase resulted from the addition of 49 new stores opened since the end of the fiscal 2006 third quarter. In addition, approximately $15.0 million of the inventory increase relates to the calendar shift. This calendar shift causes each quarter in fiscal 2007 to begin and end one week later than the comparable prior year quarter. As a result, the third quarter in fiscal 2007 ended one week closer to Christmas resulting in an additional $15.0 million of seasonal inventory, as measured on an average per store basis. Excluding the effects of the calendar shift, inventory at November 3, 2007, on an average per store basis, increased 3% compared to the prior year quarter end.* [Emphasis added]

26.    On this news, shares of the Company's stock fell $6.59 per share, or 23.96 percent, to close on December 11, 2007 at $20.91 per share, on unusually heavy trading volume.

27.    Thereafter, shares of the Company's stock continued to decline, closing at $17.86 per share on December 17, 2007.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

28.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Ulta's common stock pursuant or traceable to the Company's October 25, 2007 IPO through December 10, 2007, and who were damaged thereby (the "Class"). Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

29.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Ulta's common stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Ulta or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

30.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

31.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

32.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the

questions of law and fact common to the Class are:

      (a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

      (b)     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Ulta; and

      (c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

33.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**UNDISCLOSED ADVERSE FACTS**

34.     The market for Ulta's common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Ulta's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Ulta's common stock relying upon the integrity of the market price of Ulta's common stock and market information relating to Ulta, and have been damaged thereby.

35.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of Ulta's common stock, by publicly issuing false and misleading

statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

36.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Ulta's financial well-being and prospects. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Ulta and its financial well-being and prospects, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

**LOSS CAUSATION**

37.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

38.    During the Class Period, Plaintiff and the Class purchased common stock of Ulta at artificially inflated prices and were damaged thereby. The price of Ulta's common stock significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

39.    As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Ulta, their control over, and/or receipt and/or modification of Ulta's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Ulta, participated in the fraudulent scheme alleged herein.

40.    Also, defendant Kirby personally benefited from the IPO.  Defendant Kirby received two 316,000 option grants in July, 2007.  Upon completion of the IPO, 25% of the fair value of each grant vested, resulting in a large financial gain for defendant Kirby.

### Applicability of Presumption of Reliance:
### Fraud On The Market Doctrine

41.    At all relevant times, the market for Ulta's common stock was an efficient market for the following reasons, among others:

(a)    Ulta's stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Ulta filed periodic public reports with the SEC and the NASDAQ;

(c)    Ulta regularly communicated with public investors *via* established market

communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    Ulta was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

42.    As a result of the foregoing, the market for Ulta's common stock promptly digested current information regarding Ulta from all publicly-available sources and reflected such information in Ulta's stock price. Under these circumstances, all purchasers of Ulta common stock during the Class Period suffered similar injury through their purchase of Ulta common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

43.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular

forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Ulta who knew that those statements were false when made.

## FIRST CLAIM
### Violation of Section 11 of
### The Securities Act Against All Defendants

44.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein only to the extent, however, that such allegations do not allege fraud, scienter or the intent of the defendants to defraud Plaintiff or members of the Class. This count is predicated upon defendants' strict liability for making false and materially misleading statements in the Registration Statement.

45.    This claim is asserted by Plaintiff against all defendants by, and on behalf of, persons who acquired shares of the Company's common stock pursuant to or traceable to the false Registration Statement issued in connection with the October 25, 2007 IPO.

46.    Individual Defendants as signatories of the Registration Statement, as directors and/or officers of Ulta and controlling persons of the issuer, owed to the holders of the stock obtained through the Registration Statement the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement at the time they became effective to ensure that such statements were true and correct, and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading. Defendants knew, or in the exercise of reasonable care should have known, of the material misstatements and omissions contained in or omitted from the Registration Statement as set forth herein. As such, defendants are liable to the Class.

47.    None of the defendants made a reasonable investigation or possessed reasonable

grounds for the belief that the statements contained in the Registration Statement were true or that there was no omission of material facts necessary to make the statements made therein not misleading.

48.    Defendants issued and disseminated, caused to be issued and disseminated, and participated in the issuance and dissemination of, material misstatements to the investing public which were contained in the Registration Statement, which misrepresented or failed to disclose, *inter alia*, the facts set forth above.  By reason of the conduct herein alleged, each defendant violated and/or controlled a person who violated Section 11 of the Securities Act.

49.    As a direct and proximate result of defendants' acts and omissions in violation of the Securities Act, the market price of Ulta's common stock sold in the IPO was artificially inflated, and Plaintiff and the Class suffered substantial damage in connection with their ownership of Ulta's common stock pursuant to the Registration Statement.

50.    Ulta is the issuer of the stock sold <u>via</u> the Registration Statement.  As issuer of the stock, the Company is strictly liable to Plaintiff and the Class for the material misstatements and omissions therein.

51.    At the times they obtained their shares of Ulta, Plaintiff and members of the Class did so without knowledge of the facts concerning the misstatements or omissions alleged herein.

52.    This action is brought within one year after discovery of the untrue statements and omissions in and from the Registration Statement which should have been made through the exercise of reasonable diligence, and within three years of the effective date of the Registration Statement.

53.    By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under Section 11 as measured by the provisions of Section 11(e), from the

defendants and each of them, jointly and severally.

**SECOND CLAIM**
**Violation of Section 12(a)(2) of**
**The Securities Act Against All Defendants**

54.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55.    This Count is brought pursuant to Section 12(a)(2) of the Securities Act on behalf of the Class, against all defendants.

56.    Defendants were sellers, offerors, and/or solicitors of purchasers of the shares offered pursuant to the IPO Registration Statement.

57.    The Ulta IPO Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed to disclose material facts. The Individual Defendants' actions of solicitation included participating in the preparation of the false the misleading Registration Statement.

58.    Defendants owed to the purchasers of Ulta's common stock, including Plaintiff and other members of the Class, the duty to make a reasonable and diligent investigation of the statements contained in the IPO materials, including the Registration Statement, to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants knew of, or in the exercise of reasonable care should have known of, the misstatements and omissions contained in the IPO materials as set forth above.

59.    Plaintiff and other members of the Class purchased or otherwise acquired Ulta's common stock pursuant to and/or traceable to the defective Registration Statement. Plaintiff did not know, or in the exercise of reasonable diligence could not have known, of the untruths and

omissions contained in the Registration Statement.

60.    Plaintiff, individually and representatively, hereby offer to tender to defendants that common stock which Plaintiff and other Class members continue to own, on behalf of all members of the Class who continue to own such common stock, in return for the consideration paid for that common stock together with interest thereon.  Class members who have sold their Ulta common stock are entitled to rescissory damages.

61.    By reason of the conduct alleged herein, these defendants violated, and/or controlled a person who violated Section 12(a)(2) of the Securities Act.  Accordingly, Plaintiff and members of the Class who hold Ulta common stock purchased in the IPO have the right to rescind and recover the consideration paid for their Ulta common stock, and hereby elect to rescind and tender their Ulta common stock to the defendants sued herein.  Plaintiff and Class members who have sold their Ulta common stock are entitled to rescissory damages.

62.    This action is brought within three years from the time that the common stock upon which this Count is brought was sold to the public, and within one year from the time when Plaintiff discovered or reasonably could have discovered the facts upon which this Count is based.

### THIRD CLAIM
### Violation of Section 15 of The Securities Act
### Against the Individual Defendants

63.    Plaintiff repeats and realleges each and every allegation contained above, excluding all allegations above that contain facts necessary to prove any elements not required to state a Section 15 claim, including without limitation, scienter.

64.    This count is asserted against Individual Defendants and is based upon Section 15 of the Securities Act.

65.     Individual Defendants, by virtue of their offices, directorship and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Ulta within the meaning of Section 15 of the Securities Act.   The Individual Defendants had the power and influence and exercised the same to cause Ulta to engage in the acts described herein.

66.     Individual Defendants' position made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

67.     By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

**FOURTH CLAIM**
**Violation of Section 10(b) of**
**The Exchange Act and Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

68.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

69.     During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Ulta common stock at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

70.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Ulta's common stock in violation of Section 10(b)

of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

71.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Ulta's financial well-being, business relationships, and prospects, as specified herein.

72.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Ulta's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Ulta and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Ulta common stock during the Class Period.

73.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and

familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

74.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Ulta's financial well-being, business relationships, and prospects from the investing public and supporting the artificially inflated price of its common stock.  As demonstrated by defendants' overstatements and misstatements of the Company's financial well-being and prospects throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

75.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Ulta common stock was artificially inflated during the Class Period.  In ignorance of the fact that market prices of Ulta's common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the common stock trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by defendants, but not disclosed in public statements by defendants during

the Class Period, Plaintiff and the other members of the Class acquired Ulta common stock during the Class Period at artificially high prices and were damaged thereby.

76.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Ulta was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Ulta common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

77.     By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

78.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

### FIFTH CLAIM
### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

79.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

80.     The Individual Defendants acted as controlling persons of Ulta within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had

the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

81.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

82.     As set forth above, Ulta and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven

at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses

incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:    January 11, 2008                Respectfully submitted,

                                          By:   /s/ Marvin A. Miller
                                                Marvin A Miller
                                                Lori A. Fanning
                                                **MILLER LAW LLC**
                                                115 S. LaSalle
                                                Suite 2900
                                                Chicago, Illinois 60603
                                                (312) 332-3400

                                                ***Designated Local Counsel***

                                                **SCHIFFRIN BARROWAY
                                                TOPAZ & KESSLER, LLP**
                                                Richard A. Maniskas
                                                D. Seamus Kaskela
                                                David M. Promisloff
                                                280 King of Prussia Rd.
                                                Radnor, PA 19087
                                                (610) 667-7706
                                                (610) 667-7056 (fax)

                                                **Attorneys for Plaintiff**

## CERTIFICATION

I, Westley Bassett, ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

1.     Plaintiff has reviewed the Complaint, and authorizes its filing.

2.     Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff's purchase and sale transaction(s) in the Ulta Salon, Cosmetics & Fragrances, Inc. (NASDAQ: ULTA) security that is the subject of this action during the Class Period is/are as follows:

| Type of Security (common stock, preferred, option, or bond) | Number of Shares | Bought (B) | Sold (S) | Date | Price per share |
|---|---|---|---|---|---|
| Common stock | 28 | (B) | | 10/29/07 | $34.60 |
| Common stock | 16 | (B) | | 10/26/07 | $30.99 |
| | | | | | |
| | | | | | |

(Please list additional purchase and sale information on a separate sheet of paper, if necessary)

5.     Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.     During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as described below: _____

7.     Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _10_ day of _January_, 2008.

WESTLEY BASSETT